**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 00-40173

_____


JAMES A. JACKSON, JR.,

Plaintiff-Appellee / Cross-Appellant,

VERSUS

OMI CORPORATION, et al,

Defendants,

OMI COURIER TRANSPORT, INC.,

Defendant-Appellant / Cross-Appellee.


Appeals from the United States District Court
for the Southern District of Texas


April 4, 2001

Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge[*].

W. EUGENE DAVIS, Circuit Judge.

Following a bench trial, OMI Courier Transport, Inc. ("OMI") was found liable for injuries

sustained by Plaintiff Jackson on the basis that its vessel the OMI Courier was unseaworthy and that

it was negligent. OMI appeals that decision and the district court's allocation of only 50%

[*] Judge of the U.S. Court of International Trade, sitting by designation.

1

contributory negligence to Jackson. Jackson also appeals the allocation of contributory negligence. Because the record does not support the finding that the vessel OMI Courier was unseaworthy or that OMI was negligent, we REVERSE.

I.

Plaintiff Jackson was chief steward aboard the OMI Courier and, although he was new to the Courier, had 35 years of seagoing experience. On March 3, 1998, while the vessel was en route to Mobile, Alabama, Jackson sought out the bosun to discuss an assignment he had received from the Captain that he felt interfered with other duties that needed his immediate attention. While going from the galley to the weather or work deck, he attempted to pass through a doorway and tripped or lost his balance and fell, sustaining injuries that are the basis of this lawsuit. The parties do not dispute that Jackson is a seaman, that the accident occurred or that Jackson was injured in the accident. The district court, after a full bench trial, found that Jackson's injuries were proximately caused by the negligence of OMI and the unseaworthiness of the vessel Courier. The court awarded damages of $227,629.34 after reduction for Jackson's 50% contributory negligence, together with pre- and post-judgment interest.

**The Door**

The door through which Jackson was attempting to pass had an opening approximately 5 feet high by 3 feet wide. The bottom edge of the doorway was not level with the deck, but raised to create a coaming. A coaming at least 15 inches above the deck is required by Coast Guard regulations to prevent water from flooding from the forward work deck to the accommodation area of the deck. At its highest point, the coaming on this doorway extended 17 3/4 inches above the deck. This was the highest point over which someone would have to step while traversing the

2

doorway. When approaching the door from the interior space of the vessel to reach the outer deck, the first structure encountered is a horizontal stiffener which is approximately 11 inches above the deck and extends 10 inches from the face of the door. The structure of the door also includes vertical steel stiffeners on either side of the doorway which, like the horizontal stiffener, extend approximately 10 inches from the door. Inside these vertical stiffeners, there is a 3/4 inch thick wall surface that projects 5 inches toward the opening of the door.

Photos demonstrate and expert testimony indicates that a crew member going through the doorway could step completely over the stiffener and the coaming to the outer deck (a distance of approximately 12 inches). Alternatively, one could step on the stiffener, using it as a step, and then step over the remaining height of the coaming onto the deck. Whichever method was chosen, the vertical steel stiffeners as well as the edge of the doorway itself are available to use as steadying points.

**Jackson's Fall**

Jackson fell as he was attempting to pass through the doorway. As he described the events, as his forward foot touched the deck he was already losing his balance. His hand slipped from its grip on the edge of the doorway and his trailing foot hit the coaming. He thought that his forward foot may have come into contact with "something." Although the deck may have been wet from the butterworthing operations that were being conducted at that time, no evidence was produced that oil or other slippery substances were present in the area of the doorway. Nor does the record contain any evidence of any hoses or other equipment on the forward side of the doorway that might account for the "something" that Jackson thinks he stepped on. Two crew members who witnessed the accident testified that Jackson just stumbled over the coaming as a result of not picking his feet up

3

high enough.  At the time of the accident, the weather was clear and the seas were flat.

## II.

For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used.  Gutierrez v. Watterman S.S. Corp., 373 U.S. 206 (1963); Bowser v. Lloyd Brasileiro S.S. Corp., 417 F.2d 779 (5th Cir. 1969).  In addition, the plaintiff must establish a causal co nnection between his injury and the breach of duty that rendered the vessel unseaworthy.  Caldwell v. Manhattan Tankers Corp., 618 F.2d 361, 363 (5th Cir. 1980).  The standard of care for a Jones Act seaman is to act as an ordinarily prudent seaman would act in like circumstances.  Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 339 (5th Cir. 1997).  Findings of the district court on the issues of unseaworthiness and negligence are findings of facts, which we will uphold unless clearly erroneous.  McAllister v. United States, 348 U.S. 19, 20 (1954).  A finding is clearly erroneous when, after studying the record, the reviewing court is left with the "definite and firm conviction that a mistake has been committed."  Id.

The District Court found that the vessel was unseaworthy for lack of a handhold at the doorway where Jackson's accident occurred.  We have scoured the record without success for factual support for this finding.  The design of the doorway in question was dictated by federal regulations requiring a coaming of at least 15 inches in height.  Uncontested expert testimony established that height of the doorway at 17 3/4 inches was common.  The defendant's expert, Mr. Penn Johnson, testified that a person transiting the door was required, at a minimum, to observe the common sense precaution of holding onto the side of the door opening or one of the parallel stiffening members which run alongside the height of the door.  He also testified that it is not customary to equip doors

4

of this nature with handholds such as the district court's opinion seems to require. The record contains no evidence where such a handrail might be placed or that the installation of a handrail would reduce accident rates. The record is uncontroverted that crew members passing through the doorway can use the usual structural members ordinarily found on vessel passageways as steadying points. This was confirmed by other crew members who testified that they used the sides of the door in this manner and they had no problems traversing the doorway. All the evidence, including Mr. Jackson's own testimony, points to the conclusion that Mr. Jackson simply tripped over the coaming. Based on our review of the record, we conclude that the district court's judgment that the OMI Courier, and specifically the doorway at which Mr. Jackson's accident occurred, was not reasonably fit and safe for its intended use is clearly erroneous. On the same record, the district court's judgment that OMI was negligent in failing to provide a safe place to work is also clearly erroneous.

## III.

For the foregoing reasons, we hold that the district court's findings that the OMI Courier was unseaworthy and that OMI was negligent are clearly erroneous. We therefore reverse the judgment of the district court and render judgment in favor of OMI.

REVERSED and RENDERED.