IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30705

_____



CARROLL P. BOUDREAUX,

              Plaintiff-Appellant,

       v.

UNITED STATES OF AMERICA(US Department of Transportation,
Maritime Administration); BAY SHIP MANAGEMENT INC,

              Defendants-Appellees.

                       ****


_____

No. 00-31358

_____



CARROLL P. BOUDREAUX

              Plaintiff-Appellant

       v.

UNITED STATES OF AMERICA

              Defendant-Appellee

          ----------------------------------
       Appeals from the United States District Court
          for the Eastern District of Louisiana
          ----------------------------------

                  January 15, 2002

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This admiralty case involves a seaman's efforts to recover damages as well as maintenance and cure arising from an accident he suffered while aboard a ship. Although the district court awarded him damages, it reduced the damages award on the grounds that the seaman was comparatively negligent for the accident. Having awarded him damages, it denied his claim for maintenance and cure. For the reasons that follow, we affirm in part and reverse and remand in part.

## I. *Facts and Procedural History*

At the time of Boudreaux's injury, he was working as a merchant seaman on the S.S. AMERICAN OSPREY ("the OSPREY"), a public vessel that was operated by Bay Ship Management, Inc. ("Bay Ship"). By 1996, when he accepted the job on the OSPREY, Boudreaux had worked on and off as a seaman for 25 years. Several years earlier, in 1987, he had injured his back while working on another ship. The injury necessitated two surgeries involving fusions in the lumbar region of his spine. After the surgeries, Boudreaux was limited to light industrial work, as he could only safely lift heavy objects in a certain manner, using his legs and shoulders rather than his back.

When Boudreaux showed up for work on April 21, 1996, his supervisor, Chief Mate James M. Parker ("Parker"), instructed him and another pumpman, William L. Dunklin ("Dunklin"), to perform two jobs involving pump repair and maintenance. The first job was to replace an eight-inch eductor valve, and the second job entailed repairing a twelve-inch suction line that connected to one of the main cargo pumps by a Dresser coupling. Although Parker did not specifically instruct Boudreaux and Dunklin on the order of these tasks, he did indicate that they needed to be completed with all deliberate speed. Working alone, Boudreaux and Dunklin removed the deck plating in order

--2--

to access and repair the suction line. After removing the deck plating, they began to work on the old eductor valve. They disconnected the old valve and manually carried it across the opening in the pumproom deck caused by the removal of the deck plating. Boudreaux and Dunklin then exchanged the old valve for the new, replacement eductor valve. This new valve was extremely heavy, weighing about 300 pounds. To install the new valve, they had to retrace their course across the opening in the deck. As they carried the heavy new valve, each person was required to place one foot on the solid plating and the other foot on the exposed piping below the level of the deck plating. At some point during this traverse, one of the seamen slipped.[1] The fall caused the entire weight of the new valve to shift to Boudreaux in such a way that strained Boudreaux's right knee and cervical spine.

On April 22, 1996, Boudreaux was taken to an orthopedic doctor in Singapore, who diagnosed a tear of the medial meniscus in Boudreaux's right knee. During his return to the United States, Boudreaux also began to notice a growing pain in his neck. In February 1997, he underwent arthroscopic surgery on his knee, which reduced the pain to a tolerable level. He did not have neck surgery, however, because he responded negatively to a discogram, making surgery inadvisable. According to Dr. Stuart Phillips ("Dr. Phillips"), Boudreaux's most recent treating physician, Boudreaux will live in pain for the rest of his life. To help him cope with the effects of this pain, Dr. Phillips referred Boudreaux to Dr. David Mielke ("Dr. Mielke"), a psychologist at Tulane University. Dr. Mielke determined that Boudreaux was suffering from moderate depression and anxiety, which he characterized as an "adjustment disorder." In addition to the psychological treatment with Dr.

---

[1]Because the district court declined to address the question of who slipped, and because the answer is irrelevant to our analysis, we also do not reach the issue.

Mielke, Boudreaux participated in six physical therapy sessions between June 17, 1998 and July 1, 1998.

On May 16, 1997, Boudreaux filed suit against the government and Bay Ship under general maritime law, the Jones Act, 46 App. U.S.C. § 688, the Public Vessels Act, 46 App. U.S.C. § 781-790, and the Suits in Admiralty Act, 46 App. U.S.C. § 741-752. Alleging that his accident was caused entirely by the negligence of the defendants and the unseaworthiness of the OSPREY, he sought damages as well as maintenance and cure. On March 8, 1999, the court entered summary judgment in favor of Bay Ship.[2] Following submission and approval of a pre-trial order, which did not include a claim for maintenance and cure, the case went to non-jury trial January 18-19, 2000. On March 16, 2000, the court issued its opinion, finding that the government was negligent, but that Boudreaux was comparatively negligent to the extent of 70%. It therefore reduced Boudreaux's actual damages from $299,705.85 to $89,911.76. This figure included past and future medical expenses, past and future wage loss, and other general damages, including pain and suffering, disfigurement, disability, mental anguish, and loss of capacity for the enjoyment of life. The court also held that the vessel was not unseaworthy.

On February 22, 2000, Boudreaux filed a post-trial motion for maintenance and cure. He noted that the government had not paid him maintenance and cure since December 31, 1999. The government responded that no such payments were being made because Boudreaux still had not completed the treatment recommended by his physicians and that there was no indication that he intended to do so in the immediate future. On March 14, 2000, Boudreaux filed a supplemental

_____

[2]Boudreaux does not contest this ruling on appeal, leaving the government as the only remaining defendant.

motion for maintenance and cure, attaching a letter from Dr. Mielke stating that Boudreaux had not reached maximum medical cure and that he needed further orthopedic and psychiatric treatment. The court dismissed Boudreaux's request for maintenance and cure as moot in light of its March 16, 2000 opinion, which included future medical expenses.

Boudreaux also filed a motion to alter or amend the judgment and findings, which the court partially granted and denied. Specifically, it granted Boudreaux's request for pre-judgment interest and costs, but denied all other relief. Boudreaux timely appealed from the judgment and post-judgment ruling, and his appeal was docketed as Case No. 00-30705. On June 22, 2000, Boudreaux filed a new lawsuit seeking maintenance and cure relating to the same April 21, 1996 accident. The complaint focused as well on the government's failure to pay the future medical expenses ordered by the court in its opinion. The government moved to dismiss the complaint on the grounds of *res judicata*. The court granted the motion, holding that although it did not explicitly make an award for maintenance and cure, its award of future medical expenses was intended to cover such costs. Boudreaux timely appealed this judgment, and that appeal was docketed as Case No. 00-31358. On January 24, 2001, the two appeals were consolidated.

## II. *Discussion*

Boudreaux contends that the court erred in (1) attributing 70% comparative negligence to him, including 50% negligence for his use of unsafe procedures in performing the tasks and 20% for doing heavy lifting in spite of his previous back injury; (2) holding that the OSPREY was not unseaworthy; (3) rejecting Boudreaux's claim for maintenance and cure by denying his post-trial motion in the first suit and dismissing his second suit. We address these issues in turn.

### A. *Comparative Negligence*

In general maritime law, comparative negligence bars an injured party from recovering for damages sustained as a result of his own fault. *Miles v. Melrose*, 882 F.2d 976, 984 (5th Cir. 1989). The standard of care for a seaman under the Jones Act is to act as an ordinarily prudent seaman would act in similar circumstances. *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001). Findings by the district court on this issue are considered findings of facts and reviewed for clear error. *Id.* A finding is clearly erroneous if a review of the record leaves "a definite and firm conviction that a mistake has been committed." *Id.* (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

Regarding the court's allocation of fault for his injuries, Boudreaux dissects the court's 70% figure, claiming that the court determined that he was 50% negligent, along with Dunklin, for the way they performed the tasks, and then added an extra 20% for Boudreaux's decision to lift the heavy valve despite his prior back injury. The court, however, did not explicitly bifurcate its analysis in this way. Rather, it described its finding as "based on the totality of the circumstances," taking into account Boudreaux's knowledge of his back limitations. R. 893. The court's reasoning, nevertheless, supports Boudreaux's interpretation of the findings. The court concluded that both Boudreaux and Dunklin were at fault for the unsafe way in which they performed the tasks, and that Boudreaux was "additionally negligent" for attempting the work despite his prior back injury. *Id.* at 939. Given this analysis, the most reasonable explanation for the 70% figure is that the court first found Boudreaux and Dunklin 50% negligent and then added an extra 20% to Boudreaux for his prior back injury.

The court found that Boudreaux was comparatively negligent "when he, along with Dunklin, traversed the open space in the deck plating while manually carrying an eductor valve." *Id.* at 944. Boudreaux contests this finding, arguing that he was not equally at fault because it was Dunklin who

--6--

slipped, thereby causing the entire weight of the valve to land on him. As he was not the cause of the accident, Boudreaux argues, he should not be held equally at fault for it. The district court's finding of 50% negligence, however, was based on Boudreaux and Dunklin's choice to perform the tasks in an unsafe manner. Boudreaux conceded at trial that replacing the deck plating before moving the valve would have been the safest thing to do. Moreover, he points to nothing in the record that suggests his decision to proceed unsafely was motivated by Parker's instruction to complete the tasks with all deliberate speed. Rather, Boudreaux and Dunklin decided to take the risk of replacing the valve without covering the opening in the deck. Their ability to traverse the opening once without a mishap does not mean that this decision was not negligent. Having identified Boudreaux and Dunklin's negligence as their failure to replace the deck plating before moving the valve, the question of who actually dropped his end of the valve is irrelevant. Accordingly, the district court did not clearly err in finding that Boudreaux and Dunklin were equally at fault for their decision to traverse the open deck space while carrying a 300 pound valve, even if Boudreaux's assertion that it was Dunklin who slipped is correct.[3]

The district court also imputed an additional 20% negligence to Boudreaux for his decision to lift the heavy weight despite his previous back injury. It noted his doctor's advice that he should

---

[3]Boudreaux also relies on a theory of *res ipsa loquitur*. The district court properly did not consider this argument because it was not raised until Boudreaux's post-trial motion under Fed. R. Civ. P. 59. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (holding that motion under Rule 59 cannot be used to argue a new legal theory). Even if the *res ipsa loquitur* theory were addressed, however, it would be found unconvincing. Boudreaux cites *Johnson v. United States*, 333 U.S. 46 (1948), in which the Supreme Court applied *res ipsa loquitur* to a Jones Act case involving an injured seaman who was hit on the head by a block that fell from the control of his coworker. *Id.* at 47-48. The Court held that "where, as here, *the injured person is not implicated*, the falling of the block is alone sufficient basis for an inference that the man who held the block was negligent." *Id.* at 48 (emphasis added). In the present case, because Boudreaux himself was negligent by participating in the risky maneuver, *res ipsa loquitur* does not apply.

exercise care in lifting heavy objects, specifically using his shoulders and legs instead of his back. Furthermore, Dr. Phillips testified that he was surprised to find that Boudreaux had returned to work aboard a ship. In light of this situation, the court's conclusion that Boudreaux should not have been lifting a 300 pound valve is not clearly erroneous. This conclusion, however, does not by itself support the additional finding of negligence. The court, as well as the government on appeal, failed to identify any record evidence that Boudreaux's decision to lift the object despite his back condition in any way caused his injuries. In the absence of any such evidence, the district court's finding of an additional 20% negligence is clearly erroneous.

## B. *Unseaworthiness*

Boudreaux contends that the OSPREY was unseaworthy, and therefore caused his injury. To establish a claim of unseaworthiness, "the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson*, 245 F.3d at 527. "In addition the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* The district court's findings on unseaworthiness are findings of fact and therefore are reviewed for clear error. In support of this claim, Boudreaux relies on Dunklin's statement that the piping on which he slipped was dirty, nasty and greasy, and that there should have been planking for them to walk safely. The district court found that the condition of the exposed pipe did not cause Boudreaux's injuries; instead, they were the direct result of the decision to traverse the opening in the deck before replacing the deck plating. This finding is not clearly erroneous. Even if grease and dirt made the exposed piping slippery, Boudreaux points to no evidence that the piping was intended to safely support two men walking across it while carrying a heavy weight. As such, there is no

--8--

showing that the ship was not reasonably safe for the purposes for which it was to be used.

## C. *Maintenance and Cure*

Boudreaux contends that the district court erred in denying his motion for maintenance and cure. Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship. *See Silmon v. Can Do II, Inc.*, 89 F.3d 240, 242 (5th Cir. 1996). The doctrine of maintenance entitles an injured seaman to food and lodging of the kind and quality he would have received aboard the ship. *See Hall v. Noble Drilling (U.S.) Inc.*, 242 F.3d 582, 586 (5th Cir. 2001). The duty to provide cure encompasses not only the obligation to reimburse medical expenses actually incurred, but also to ensure that the seaman receives the proper treatment and care. *See Guevara v. Mar. Overseas Corp.*, 59 F.3d 1496, 1500 (5th Cir. 1995). The maintenance and cure duty terminates only when maximum cure has been reached, *i.e.*, "where it is probable that further treatment will result in no betterment in the claimant's condition." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). The obligation is independent of tort law, and the shipowner's duty to pay is not affected by the injured seaman's own negligence. *See Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir. 1994). Determination of maintenance and cure is a factual issue, and therefore is reviewed for clear error. *Id.*

Boudreaux complains that the district court failed to award him the maintenance and cure to which he is entitled.[4] In denying Boudreaux's post-trial motion for maintenance and cure, it noted

---

[4]Boudreaux also argues that the trial court should not have granted the government's motion in limine to strike an expert report by Dr. Mielke as untimely. A district court's decision to strike a report for failure to meet a deadline is reviewed under the deferential abuse of discretion standard. *See Muñoz v. Orr*, 200 F.3d 291, 303 (5th Cir. 2000). Dr. Mielke's report was submitted on November 5, 1999, well after the September 22 deadline. The district court noted that the record reflected a pattern of delay, and Boudreaux's excuse that the untimely report was filed when it was received by counsel is insufficient. Finally, despite the striking of his report, the district court allowed

that it had already made an award for future medical expenses, and that Boudreaux was not entitled to duplicate that award with cure. Although the court was correct in noting that a cure award cannot duplicate tort damages, *see Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991) ("[A] seaman clearly can receive only one recovery for his medical expenses."), it was incorrect in concluding that this case posed such a problem. In fact, no duplication would occur in this case because the court reduced the future medical expenses award by 70% to account for Boudreaux's comparative negligence. Even if this reduction were proper for tort damages, cure awards cannot be so reduced, as the duty to provide maintenance and cure is contractual and arises independently of tort law. *See Bertram*, 35 F.3d at 1013 (holding that a seaman's negligence does not negate a shipowner's duty to pay maintenance and cure).

This problem resurfaced in Boudreaux's second suit. Having failed to obtain an award for maintenance and cure in his original suit, Boudreaux filed a second complaint on June 22, 2000. This second action included claims for maintenance and cure from January 1, 2000, payment of the future medical expenses awarded under the court's opinion in the original suit, as well as compensatory damages and attorney's fees arising from the government's failure to pay maintenance and cure. The government moved to dismiss the second complaint on the grounds of *res judicata*, and the district court granted the motion. The court noted that it already had found in the first suit that no medical procedure would improve Boudreaux's physical condition; therefore the evidence established that Boudreaux had reached maximum medical cure. Nevertheless, it recognized that Boudreaux continued to suffer psychologically, and indicated that the award for future medical expenses was

Dr. Mielke to testify during trial on Boudreaux's current condition and his need for treatment. Indeed, in its opinion, it adopted Dr. Mielke's testimony regarding future medical expenses of $6000 over two years.

intended to help alleviate that distress.

Given the court's determination that Boudreaux still needed therapy to improve his mental condition, it could not have concluded that he had reached maximum medical cure. Maximum medical cure occurs when "it is probable that further treatment will result in no betterment in the claimant's condition." *Rashidi*, 96 F.3d at 128. As the court found that further treatment would, in fact, improve Boudreaux's condition, it necessarily follows that he has not reached maximum medical cure. Moreover, the court's reasoning that its future medical expenses award was the substantial equivalent of a cure award was erroneous. As discussed above, a reduced future medical expenses award cannot be fully duplicative of an award for cure.

### III.  *Conclusion*

For the foregoing reasons, we affirm in part and reverse and remand in part the judgment of the district court. We affirm the district court's attribution of 50% comparative negligence to Boudreaux on the basis of his and Dunklin's decision to carry the valve across the opening in the deck before replacing the deck plating. We also affirm the district court's finding that the OSPREY was not unseaworthy. We reverse, however, the district court's allocation of an additional 20% negligence to Boudreaux for lifting the valve despite his prior back injury. On remand, the court should restore to Boudreaux $59,941.17, representing the 20% of his actual tort damages that was denied him on the basis of the finding that he was 20% additionally negligent. Regarding maintenance and cure, the court should award Boudreaux maintenance in the amount it determines to be reasonable. It should also award Boudreaux cure, including the *reimbursement* of actual and reasonable medical expenses. Boudreaux may not duplicate his cure award by receiving reimbursement of actual medical expenses and an award of past and future medical expenses. Therefore, because part of Boudreaux's tort award

--11--

includes past and future medical expenses, to the extent that the government pays that amount, it is entitled to a credit against its cure obligation. The government's obligation to provide maintenance and cure shall continue until Boudreaux reaches maximum medical cure.