Lisbet Pia JENSEN, Plaintiff,

v.

William LAWLER, an individual; Carol Lawler, an individual; the "Wendy Lynne," a vessel; and Does 1 through 100, inclusive, Defendants.

No. CIV.A. H–00–2415.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 5, 2002.

James Clifford Sabalos, Gladych & Associates, Newport Beach, CA, Michael I Branisa, Tarics & Carrington, Houston, John A Gladych, Gladych & Asoc Inc, Newport Beach, CA, for Lisbet Pia Jensen, individual, plaintiff.

James M Tompkins, Galloway Johnson et al, Houston, Peter Shafer Forgie, Forgie & Jacobs, Westlake Village, CA, for William Lawler, individual, Carol Lawler, individual, Wendy Lynne, A Vessel, Does 1–100, inclusive, defendants.

## FINAL JUDGMENT

BOTLEY, United States Magistrate Judge.

Following a trial of this matter, on October 11, 2002, a jury verdict in the amount of two hundred thousand ($200,000) dollars

was reached on behalf of the Plaintiff Lisbet Pia Jensen ("Jensen"), solely as to Lisbet's claim that Defendants William and Carol Lawler ("Lawler"), in violation of their duty, failed to provide Lisbet with maximum cure. This Court has received no objections to the verdict. In accordance with the jury's findings and award, as well as the Court's other rulings announced in open court during the trial of this case, each of which are incorporated into this Final Judgment by reference, it is,

**ORDERED** that Defendants William and Carol Lawler shall pay to Plaintiff Lisbet Pia Jensen, the sum of two hundred thousand dollars ($200,000), said sum reflecting the jury's award to Jensen for its finding that Defendants are liable for failing to provide Jensen maximum cure and her resultant damages. Further, it is

**ORDERED** that Defendants William and Carol Lawler shall pay to Jensen post-judgment interest on the damages awarded pursuant to this Judgment. The interest shall accrue from the date of this Judgment until paid, at the rate of 5.271% compounded annually. Finally, it is

**ORDERED** that the costs of Court shall be borne by the respective party incurring same.

All relief not specifically granted in this Judgment is **DENIED**.

The Clerk of Court shall file this Final Judgment and provide the parties with a true copy.

## MEMORANDUM AND ORDER

Pending before the Court are the Plaintiff Lisbet Pia Jensen's ("Jensen") Renewed Motion for Judgment as a Matter of Law, brought pursuant to Rule 50(a), Fed. R.Civ.P., as well as a Rule 59(e) request that the Court Amend its Judgment to Provide for Costs to Plaintiff, or alternatively, a Motion for Partial New Trial or a New Trial, pursuant to Rule 59(a), Fed. R.Civ.P. *See* Plaintiff's Renewed Motion for Judgment as Matter of Law, Partial New Trial, New Trial and Amend Judgment to Provide for Costs (Entry # 43) and Plaintiff's Reply to Defendants' Opposition to Motion for Judgment as a Matter of Law (Entry # 46).[1] Jensen contends that the verdict, reached following a jury trial of her claim that she was injured, when she was employed as a seaman aboard the vessel, the Wendy Lynne, owned by Defendants Carol and William Lawler ("Lawlers"), was inconsistent and against the clear weight of the evidence. See *id.* As a consequence, Jensen seeks a finding that the Lawlers were negligent and that their vessel was unseaworthy, at the time of the incident complained of, in violation of the Jones Act, 46 U.S.C. app. § 688, *et seq.* *Id.* Entry of a Judgment in conformance with that sought by Jensen would be contrary to the jury's findings in this matter. Additionally, Jensen requests that the Final Judgment (Entry # 41) be amended to allow Jensen the recovery of her costs of Court. *Id.*

Naturally, the Lawlers maintain the jury verdict in this maritime action, conformed with the great weight of the evidence and the law and, accordingly, oppose the entry of a verdict differing from that reached by the jury. Furthermore, Defendants maintain that the verdict in this instance, was a reasonable exercise of the jurors impartial judgment and that Jensen has failed to establish that, in light of the evidence presented at trial, a different conclusion would have been reached. Finally, the Lawlers assert that Jensen's failure to prevail on the majority of her claims, refutes her

---

1. Jensen's pleadings will generally be collectively referred to as the single instrument "Renewed Motion for Judgment as a Matter of Law (Entry # 43)," except when otherwise noted.

request for the entirety of her attorneys' fees and costs of Court. *See* Defendants' Opposition to Renewed Motion for Judgment as a Matter of Law (Entry # 45).

The Court, having reviewed the motion, its opposition, the Court's charge, the jury verdict and the transcription of counsel's closing argument, and for the reasons set forth below, finds no cause to enter Judgment in Jensen's favor as a matter of law as to the issues of negligence and "unseaworthiness." The Court has determined that any concession made by defense counsel as to Defendants' liability, was as to the issue of "maximum cure" and not as to negligence or "unseaworthiness." Further, the Court has found that the jury's findings as to negligence and "unseaworthiness" were consistent and any harm caused by the inclusion of a redundant Interrogatory was cured by the Court's Jury Instructions and the instructions on the pertinent Interrogatories. The Court has also found, however, that Jensen should be allowed to submit a Request for Attorneys' Fees and Costs reflecting those reasonable and necessary fees and costs she incurred in the prosecution of her "maximum cure" claim, the sole issue upon which she prevailed at trial.

## FACTS

### Pertinent Factual and Procedural Background

Jensen filed her lawsuit on July 14, 2000, by invoking the Court's original maritime jurisdiction, conferred by 28 U.S.C. § 1333, and alleging that on July 20, 1997, she was employed as a seaman by the Lawlers aboard their vessel, the Wendy Lynne, when at the direction of the vessel's captain, Drew Peerless ("Peerless"), she jumped from the deck of the vessel to the dock in an attempt to assist the crew in docking the vessel at a fuel dock. Jensen contends that as a consequence of the Defendants' failure to provide her a safe place to work and the unseaworthiness of the vessel, she suffered broken bones in her right leg and ankle and the heel of her left foot after jumping barefoot, over six feet, from the vessel's deck to the dock. Jensen sought past and future lost wages and damages for future medical treatment for her purported permanent disability incurred as a result of the Defendants' alleged wrongful conduct. *See* Joint Pretrial Order (Entry # 25).

The Lawlers denied Jensen's allegations and maintained that Jensen represented herself as an experienced member of the vessel's crew and chose the manner, without the direction of others, in assisting the vessel's docking. Further, Defendants maintained that Jensen was not permanently disabled and that any injuries she sustained were a consequence of her own fault. *Id.*

Jensen's claims were tried before a jury during a period of five days, from October 7 through October 11, 2002. On October 11, 2002, the jury determined that Jensen should receive two hundred thousand dollars ($200,000.00) to recompense her for the Lawlers' failure to provide her maximum cure. *See* Court's Instructions to the Jury (Entry # 35) and Interrogatories to the Jury (Entry # 40). The jury found in the Lawlers' favor on the issues of negligence and unseaworthiness. See Interrogatories numbered 1 and 3 of Interrogatories to the Jury (Entry # 40). The jury also determined that Jensen was thirty-five percent (35%) contributorily negligent and that her conduct was a proximate cause of her injuries. *Id.* at Interrogatories numbered 5, 6 and 7. Immediately following the announcement of the verdict, an oral motion was made, requesting entry of Judgment in Jensen's favor as a matter of law as to the issues of negligence and unseaworthiness, contending that the jury's findings were inconsistent and failed to conform with the evidence presented at

trial. Jensen's oral Motion for Judgment as a Matter of Law was denied. *See* Renewed Motion for Judgment as Matter of Law (Entry # 43).

Final Judgment (Entry # 41) was entered on November 5, 2002, in which Jensen was awarded two hundred thousand dollars ($200,000) reflecting the jury's finding, said amount, together with post-judgment interest, to be paid by the Lawlers for their failure to provide Jensen with maximum cure. Further, each party was assessed their respective costs of Court. No allowance was made for attorneys' fees as no averred and documented request was tendered. *See* Final Judgment (Entry # 41). Following the entry of Final Judgment, Jensen renewed her request for Judgment as a Matter of Law or alternatively, a New Trial or Partial New Trial, and an Amended Judgment to Provide for Costs (Entry # 43).

## STANDARDS OF REVIEW

### The Motion for Judgment as a Matter of Law

■ A judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on the issues on which it prevailed. *FED.R.CIV.P. 50(a);* see also *Anthony v. Chevron USA, Inc.,* 284 F.3d 578, 582–83 (5th Cir.2002). This occurs when the "facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Wallace v. Methodist Hospital System,* 271 F.3d 212, 219 (5th Cir. 2001) (*quoting Rubinstein v. Administrators of the Tulane Educ. Fund,* 218 F.3d 392, 401 (5th Cir.2000); see also *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc* )). A review of the record must be performed in a manner in which all reasonable inferences are drawn in favor of the nonmoving party, without

making credibility determinations or weighing the evidence. *Laxton v. Gap, Inc.,* 333 F.3d 572 (5th Cir.2003); *Viazis v. American Assoc. of Orthodontists,* 314 F.3d 758, 761 (5th Cir.2002); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 705 (5th Cir.1997). The evidence, however, must be more than a mere scintilla and be sufficient "so that a jury will not ultimately rest its verdict on mere speculation and conjecture." See *Anthony v. Chevron,* 284 F.3d at 583; *Gulf Coast Real Estate Auction Co. v. Chevron Indus., Inc.,* 665 F.2d 574, 577 (5th Cir.1982). Evidence favorable to the moving party, however, that the jury is not required to believe must be disregarded and credence is to be given to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses. See *Wallace v. Methodist Hospital System,* 271 F.3d at 219.

### The Motions for New Trial or Partial New Trial

■ A new trial should not be allowed unless the verdict is against the great weight of the evidence. *Carr v. Wal–Mart Stores, Inc.,* 312 F.3d 667, 670 (5th Cir. 2002); *Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 269 (5th Cir.1998). A new trial is allowed when "it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Sibley v. Lemaire,* 184 F.3d 481, 487 (5th Cir.1999) (*quoting Del Rio Distributing, Inc. v. Adolph Coors Co.,* 589 F.2d 176, 179 n. 3 (5th Cir.1979)). In granting a new trial, the Court is to weigh all the evidence but need not view it in the light most favorable to the nonmovant. *FED.R.CIV.P. 59;* see also *Laxton v. Gap, Inc.,* 333 F.3d 572, ——, slip at 3221; *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir.1985).

■ In those instances in which the jury's findings are alleged to be inconsis-

tent, a trial court has the duty to attempt to reconcile a jury's responses to special interrogatories, if possible, in order to validate the jury's verdict. See *Carr v. Wal–Mart Stores, Inc.*, 312 F.3d at 670, 672; *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir.1987). Federal policy favors jury decisions on issues of disputed fact. See *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962); *Carr v. Wal–Mart Stores, Inc.*, 312 F.3d at 672; The Courts have been urged to utilize "exegesis" if necessary, to reconcile jury findings. See *id. (quoting Gallick v. Baltimore & O.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)).

█ Partial new trials should not be resorted to unless it appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice. *Anderson v. Siemens Corp.*, 335 F.3d 466, *slip op.* 3472, 3481 (5th Cir.2003); *Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479, 481 (5th Cir.1985). Only in those instances in which issues subject to retrial are not so "interwoven" with other issues presented that they can't be submitted for retrial without incurring confusion and uncertainty to the extent of denying a fair trial, will it be proper to grant a partial new trial. *Id.*

## DISCUSSION

### I. Jensen has Failed to Establish That There Was No Legally Sufficient Evidentiary Basis For the Jury to Find In Favor of the Lawlers on the Issues of Negligence and Seaworthiness of the Vessel

Jensen contends, in support of her request for the entry in her favor of a Judgment as a matter of law, that following the presentation of evidence and during the closing arguments, counsel for the Lawlers admitted that the Defendants failed to provide Jensen a safe place to work and urged the jury to award Jensen $250,000 for pain and suffering, together with $11,000 for future medicare care and treatment, and to assess seventy percent (70%) of the liability against the Lawlers. *See* Renewed Motion for Judgment as Matter of Law (Entry # 43). Jensen asserts that Defendants' counsel's closing argument was deliberate, clear and unambiguous and, thereby, constituted a judicial admission of the Lawlers' liability. Further, Jensen maintains that the jury's findings that the Lawlers were not culpable for negligence or maintaining an unseaworthy vessel, was contrary to the instruction that the jury find that the Lawlers admitted that their failure to provide a United States citizen to captain the vessel deemed the vessel "unseaworthy." *Id.; see also* p. 10, Court's Instructions to the Jury (Entry # 35) and Interrogatories numbered 2 and 3 of Interrogatories to the Jury (Entry # 40). Jensen contends, therefore, that in light of Peerless' admission, during the trial, that he was not a United States citizen at the time he captained the Wendy Lynne and Jensen suffered her alleged injuries, the jury's instructed finding that the failure to provide a United States citizen as captain of the vessel constituted the maintenance of an unseaworthy vessel and a breach of the Jones Act,[2] was inconsistent with the jury determination that the Lawlers' conduct did not make them culpable for "unseaworthiness." See *id.* Jensen urges, therefore, that as to the issues of negligence and "unseaworthiness," an entry of Judgment in her favor, as a mat-

---

**2.** Section 8103(a) of the Jones Act provides that, "[o]nly a citizen of the United States may serve as master, chief engineer, radio officer, or officer in charge of a deck watch or engineering watch on a documented vessel". *46 U.S.C. section 8103(a).*

ter of law, or alternatively, a new trial or partial new trial at which Jensen concedes thirty percent (30%) liability, is appropriate. *Id.*

The Lawlers maintain that the jury's verdict was not inconsistent and that during closing arguments, their attorney made no statements that can be construed as judicial admissions of their liability as to negligence or "unseaworthiness." *See* Defendants' Opposition to Renewed Motion for Judgment as a Matter of Law (Entry # 45). Defendants contend, therefore, that the jury's verdict should be affirmed and that Jensen's renewed request for Judgment as a matter of law must be denied. *Id.*

## A. Negligence and Maximum Cure

### (1) The Court's Instructions to the Jury Not to Reduce Any Award for Failure to Provide Maximum Cure Remedied Any Argument Seeking Such a Reduction Due to Comparative Negligence

█ It is essentially the following portion of the Lawlers' counsel's soliloquy, offered during closing argument, that convinces Jensen that defense counsel made a judicial admission of his clients' negligence and that liability must, therefore, be imputed against the Lawlers by entry of a Judgment as a matter of law in Jensen's favor:

> . . . And she was in a lot of pain and underwent a lot of recuperation and it was just—it was miserable. I'm sure. There's no question about it. We're not disputing that. And we're asking you to compensate her for that.
>
> We're asking you to compensate her for whatever residuals can reasonably be expected, based on the medical evidence before you, that she will incur in the future. And I'm saying to you, based on the evidence, that that would suggest that she has mild pain now and that it might get worse when she turns fifty;

and it can be handled conservatively. And if worst comes to worst, she will deal with it with an orthoscopic procedure at $11,000.

> Acknowledging that fault lies with the vessel, through Peerless because of his failure to ensure her welfare, I'm asking you to give her $250,000 plus $11,000 for this—the anticipated cost of that surgery. A quarter of a million dollars for past and future problems. If she puts some of it away, it's going to be a lot when those symptoms arise again, twenty years from now. It think that is absolutely fair compensation. More than fair, really. And it takes into consideration the only amount of medical damages, medical specialists that we have before us, the $11,000. See *Transcript of Proceedings of Partial Transcript* at p. 51–52 (Entry # 42) and Exhibit "A," Defendants' Opposition to Plaintiffs' Motion for Judgment as a Matter of Law (Entry # 45).

A full reading of Defendants' attorney's closing argument, however, reveals that he appears to have only conceded his clients' liability on the issue of the failure to provide "maximum cure" and not as to negligence. Counsel acknowledged during his closing that in hindsight only, the vessel's crew wrongfully made the assumption that Jensen was a fully experienced seaman, saying,

> They assumed that she knew what she was doing on a sailboat. They assumed that she had had during that four-month period of ocean travel, the entire time that she was on that boat, they assumed that she had picked up the basics of sailing, and that included docking. They blew it, Kevin and Drew, apparently, were wrong in that assumption. We admit that.

and,

> I acknowledge that it was wrong. In hindsight, obviously, they should have

something different. *Id.* at pp. 27, 28 and 36.

Defendant's counsel continued to argue, however, that despite the wrong assumption, the vessel's crew reasonably relied upon Jensen's failure to apprise them that she was inexperienced and that, accordingly, their conduct was not negligent and Jensen's injuries were not reasonably foreseeable. Counsel further argued:

> But bear in mind that you have to look at this in the light of circumstances that existed out there.

> I want to show you what Lisbet has said in terms of her state of mind as that boat approached the dock:

> "you did feel capable of jumping."

> "Yeah."

> This indicates how long she had to consider all the circumstances that existed. She was standing on the thing, by her estimate, five minutes. What—knowing—they got within two, three feet of the dock. She was looking and said she's standing on the rail looking down at it. Twice, by her testimony. It just kept going around.

> "Did you have any questions at that time as to what you were expected to do?"

> "No, not really."

> "Did you feel comfortable with the thought of jumping from the boat to the dock at that point that you were circling around?"

> "Yeah, if we would get close enough."

> "Apart from what you believe your duty was, did you feel physically capable of jumping from the boat to the dock safely?"

> "Yes, I think I thought it was safe to jump."

> That's what Drew and Kevin were thinking. That is their thought process as well. But now the finger of blame is being pointed at them and completely away from herself, even though she was the one privy to all this information and she knew in her heart what her abilities were and what her experiences were. This is her statement.

> "You weren't nervous doing that"—with respect to the job that she was doing.

> "No not at all."

> ... Those are her words. We didn't put that in her mouth. Those are her words, both at the time of her statement and at the time of her deposition.

> \* \* \* \* \* \*

> Now, the interesting thing is, either Lisbet Jensen was operating under the same misapprehension as to her abilities, that was—that she believed she could do what was asked of her, which is all they're saying that Drew and Kevin concluded. A wrong assumption. Drew and Kevin, wrong assumption. Lisbet could not handle it.

> Well, Lisbet has said, "I can handle it." And she knew exactly what she was being asked to do. She could judge the distances. She knew the size of the boat. She knew where the dock was. And she has said that she could handle. If that is either—you could either conclude that she believed she could handle it, as Drew and Kevin believed she could do it. Or you have to conclude that if she had any doubts, she wasn't going to speak up about it.

> If she had doubts about her abilities, if she had doubts about her experience, if she had doubts about what she saw in terms of the boat and the dock, then she should have said something to somebody. If not Drew, then certainly Kevin who's standing right next to her while they're making the three passes. Yeah, but I don't feel right about this thing. What am I going to do? Simple as that. If you've done this before (indiscernible) hold on to the line. It's that simple.

Speak up. That really all it would have taken....

and,

\* \* \* \* \* \*

And also recognize that this accident was not all Drew Peerless's fault. This was a mutual mistake. Either Lisbet Jensen operated under the assumption she could handle that, with all the facts known to her and knowing her experience, knowing her abilities. Or she remained silent about her doubts and didn't say anything that could have gotten her out this and could have corrected the situation. One of the two.

That places responsibility on her for her own welfare. Why would she have remained silent? That would have been for her own benefit because she wanted this job. But she can't blame us for that silence..

I told you what I—what Drew and Kevin knew at the time that she joined the boat. And I believe that it's understandable that they reached the conclusion that they did, she was able to do this.

\* \* \* \* \* \*

Counsel continues to argue that the event was merely an "accident" not negligence, saying,

Absolutely sad and tragic situation. It was a bad accident.

and, that Jensen was responsible for the incident,

... It is our contention that that—she did not care for herself in the manner in the manner that she was instructed to do. *Id.* at pp. 32, 35–37.

Counsel for Defendants does appear, however, to concede partial liability as to the issue of "maximum cure." He seems to argue that the failure to pay the full amount for Jensen's current medical bill and to allow for future medical payments, may have rendered Defendants responsible for the failure to provide maximum cure, diminished by the proportion of negligence attributable to her.

I'm going to take an aside for a moment. There is this issue that's come out about us not paying this bill, that she's entitled to cure.

\* \* \* \* \* \*

and,

... she was in a lot of pain and underwent a lot of recuperation and it was just—it was miserable. I'm sure. There's no question about it. We're not disputing that. And we're asking you to compensate her for that.

We're asking you to compensate her for whatever residuals can reasonably be expected, based on the medical evidence before you, that she will incur in the future. And I'm saying to you, based on the evidence, that that would suggest that she has mild pain now and that it might get worse when she turns fifty; and it can be handled conservatively. And if worst comes to worst, she will deal with it with an orthoscopic procedure at $11,000.

Acknowledging that fault lies with the vessel, through Peerless because of *his failure to ensure her welfare,* I'm asking you to give her $250,000 plus $11,000 for this—the anticipated cost of that surgery. A quarter of a million dollars for past and future problems. If she puts some of it away, its going to be a lot when those symptoms arise again, twenty years from now. It think that it is absolutely fair, really. And it takes into consideration the only amount of medical damages, medical specialists that we have before us, the $11,000.

... Drew and Kevin could have acted differently, perhaps. Maybe the Lawlers could have acted differently, but so could Lisbet Jensen.

And I ask you, when it comes to the analysis on the verdict form, to assign an appropriate degree of compared negligence. I suggest to you that the appropriate amount is 70 percent to the boat and 30 percent to Lisbet Jensen. *Id.* at pp. 46, 51, 52. *Italics provided.* Counsel's arguments have misconstrued the failure to effect or provide "maximum cure," as if it is a tortious act. When defense counsel argues that Peerless failed to provide Jensen a safe place to work, he is not asserting that Defendants' conduct constituted a breach of the Jones Act and was, therefore, negligence. A full reading of the argument reveals that counsel attributed the liability to Defendants for failure to render "maximum care" as deriving from Peerless' failure to *"ensure that the seaman receives the proper treatment and care,"* which is the standard to determine whether a breach of the duty to provide maximum care occurred, the violation of a contractual obligation not a tort. See *Boudreaux v. United States,* 280 F.3d 461, 468 (5th Cir.2002)(emphasis added), quoting *Guevara v. Mar. Overseas Corp.,* 59 F.3d 1496, 1500 (5th Cir.1995). Counsel, however, erroneously treated Defendants' alleged conduct as if the failure to effect maximum cure is a negligent act rather than a breach of a contractual duty. See *id. Transcript of Proceedings* (Entry # 42) at p. 52.

Defense counsel's error did not stop at merely treating his clients' failure to provide maximum cure as a negligent act, but also argued that any recovery for cure be diminished by Jensen's contributory negligence. See *id.* Despite defense counsel's argument, there is nothing in the verdict suggesting that the jury reduced the award for failing to provide the maximum cure. The jury instructions point out that Jensen's "maximum cure" claim was distinctly separate from the negligence and unseaworthiness claims. See Court's Instructions to the Jury (Entry # 35) at p.

11. Further, the Instructions mandated the jury not reduce the award by any negligence attributable to Jensen, by providing, "[t]he entitlement to cure may not be reduced because of any negligence on the part of the seaman." *Id.;* see also *Boudreaux v. United States,* 280 F.3d at 469. The Interrogatories to the Jury (Entry # 40) never directed the jury to consider or apportion Jensen's "fault" with respect to the issue of maximum cure, nor did the jury verdict direct the jurors to reduce the "maximum cure" award on the basis of fault.

As was the case when considering Jensen's argument supporting her oral request for Judgment as a Matter of Law, the Court determined that counsel's argument may have been, at most, a concession of liability with respect to maximum cure but not as to negligence or unseaworthiness. In reviewing Jensen's renewed motion, the Court is not persuaded that the jury's award to Jensen for Defendants' failure to provide "maximum cure" was reduced by the proportion of negligence attributed to her by the jury, despite Defendants' attorney's apparent argument that this could be done. The mere fact that the jury awarded Jensen less than defense counsel recommended, is not an indication that the jury's award was based on less than legally sufficient evidentiary factors, was otherwise considered improperly, or was against the great weight of the evidence and, accordingly, Jensen's request for a judgment in her favor on those issues or a new trial must be denied.

**B. Unseaworthiness**

**(1) A Finding of "Unseaworthiness" Was Not Inconsistent With the Finding that, in the Absence of Proximate Cause, the Lawlers Had No Liability for the Unseaworthy Condition**

 Jensen claims that Peerless' acknowledgment that he was the captain of

the Wendy Lynne at the time of the incident complained of, but was not a United States citizen, is inconsistent with the jury's finding that the Lawlers failed to furnish a seaworthy vessel, however, a reading of the Instructions and the jury's response to the Interrogatories, shows otherwise. Both the Court's Instructions to the Jury (Entry # 35) and the Interrogatories to the Jury (Entry # 40) make clear, that the Lawlers were to be deemed liable for Jensen's injuries, if the failure to provide a United States citizen as captain of the vessel, was found by the jury to be a proximate cause of Jensen's injuries. *See* Instructions to the Jury at p. 10 (Entry # 35) and Interrogatories numbered 3 and 4 to the Interrogatories to the Jury (Entry # 40). The Instructions provided in relevant part, as follows:

At the time of the incident, federal law required that only a United States citizen may serve as master, chief engineer, radio officer or officer in charge of a deck watch or engineering officer on a documented vessel. It has been admitted that the captain of the Wendy Lynne was not a citizen of the United States. You are instructed, therefore, that if you find that this violation was a proximate cause of Plaintiff's claimed injuries, then you shall find for the Plaintiff on the claim of unseaworthiness. *Id.*

The jury responded "no" to Interrogatory No. 3, which queried, "[d]o you find from a preponderance of the evidence that Defendants, William and Carol Lawler failed to furnish a seaworthy vessel?" *See* Interrogatory numbered 3, Interrogatories to the Jury (Entry # 40). It is clear that the jury determined that the Lawler's failure to provide a captain of their vessel with United States citizenship, was not the proximate cause of Jensen's injuries. If the jury answered "yes" to Interrogatory No. 3, they were directed to specifically answer the query as to "proximate cause" requested by Interrogatory No. 4. The jury's "no"

response, however, resulted in the direction to the jury to skip Interrogatory No. 4, as a "no" answer to either Interrogatories 3 or 4 would necessarily result in a finding of no liability for unseaworthiness. In actuality, the Court's instruction that the failure to provide a United States citizen as the captain of the vessel, constituted the vessel being unseaworthy, negated the necessity for the inclusion of both Interrogatories numbered 3 and 4. The Court's admonition that the jury could only find in Jensen's favor on the issue of "unseaworthiness," if it found that the failure to provide a United States citizen as captain of the vessel was found to be a proximate cause of Jensen's claimed injuries, was tantamount to the jury's finding that the Lawlers' failure to provide a United States citizen as captain of the vessel, was not a proximate cause of Jensen's alleged injuries, when it responded to Interrogatory No. 3. In light of the Court's instruction, it is clear in this instance that Interrogatory No. 4 was a mere redundancy of the information requested by Interrogatory No. 3. Because, however, Interrogatory No. 4 was omitted from the jury's purview as a result of the response to Interrogatory No. 3 and the consequent direction for the jury to skip Interrogatory No. 4, no harm was suffered by the inadvertent inclusion of both Interrogatories.

The Court's instruction that Peerless' admission that he was not a United States citizen when he captained the Lawlers' vessel constituted a violation of the Jones Act and that a finding that the violation was a proximate cause of Jensen's injuries would result in a determination in Jensen's favor on the issue of "unseaworthiness," compels the construction of the jury's determination in the Lawler's favor as to "unseaworthiness," as the result of a finding that the violation was not a proximate cause of Jensen's injuries, as the only reasonable one. The juries verdict is not,

therefore, inconsistent and a Judgment in Jensen's favor as a matter of law on the issue of "unseaworthiness," or a retrial of the issue would, consequently, prove as improper as for the negligence issue.

## II. The Final Judgment will be Amended to Allow Plaintiff to Recover The Reasonable and Necessary Attorneys' Fees and Costs of Court Incurred in Successfully Prosecuting The Failure to Provide Maximum Cure Issue

Jensen requests the Court amend its Final Judgment (Entry # 41) to allow her to recover her court costs and attorneys' fees. The Final Judgment directed that the parties would bear their own respective costs of Court. *See* Final Judgment (Entry # 41).

■■■■■ Granting or denying a request to amend a Judgment is within the Court's discretion and its decision will only be set aside upon a showing of unreasonableness. *Whelan v. Winchester Production Co.*, 319 F.3d 225, 231 (5th Cir.2003); *Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir.2002). Furthermore, the Court's discretion is equally as broad in awarding or denying attorneys' fees or costs. See *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623, 628 (5th Cir.2002); *Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir.2001).

■■■■ The Court is, however, mindful that generally a party is allowed those attorneys' fees and costs for those issues on which it prevails. See *e.g., Coffel v. Stryker Corp.*, 284 F.3d 625, 640, *reh'g denied* (5th Cir.2002). Where as here, Jensen has prevailed on her contractual claim of the failure of Defendants to provide her maximum cure, she should be allowed the recovery of those reasonable and necessary costs and attorneys' fees that she can establish she incurred in the prosecution of her contractual claim. See *id.* Jensen has not, however, presented any sworn documentation as to the reasonableness or necessity of either her costs or attorneys' fees. The Final Judgment (Entry # 41) will be amended to allow those costs and attorneys' fees which Jensen can establish were reasonable and necessary in light of the twelve factors set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974). See *Volk v. Gonzalez*, 262 F.3d at 543, n. 10. With respect to the Final Judgment's (Entry # 41) pronouncement as to costs, the Judgment is, therefore, stayed and will be amended to allow those costs and attorneys' fees found to be reasonable and necessary for the prosecution of Jensen's "maximum cure" claim; but, is final as to the remainder of its provisions.

## CONCLUSION

Following a review of Plaintiff's motions, as well as Defendants' objections and the record, including the Court's charge, the jury's verdict and the transcript of closing arguments, it is found that Jensen's request for a Judgment in her favor, as a matter of law or, alternatively, for a new trial or partial new trial must be denied, as the jury's verdict is not inconsistent and has a legally sufficient evidentiary basis and, accordingly, is not against the great weight of the evidence. Jensen's request, however, for an amendment of the Final Judgment (Entry # 41) to allow the recovery of her costs and attorneys fees will be allowed, in conformance with that set forth herein. It is, therefore,

**ORDERED** that Jensen's Renewed Motion for Judgment as a Matter of Law, Partial New Trial, New Trial and Amend Judgment to Provide for Costs (Entry # 43) is **DENIED in part and GRANTED in part**. Additionally, it is

**ORDERED** that Jensen's Renewed Motion for Judgment as a Matter of Law or, alternatively, a Motion for Partial New

Trial or a New Trial (Entry # 43) is **DENIED**. Further, it is

**ORDERED** that Jensen's Motion to Amend Judgment to Provide Costs (Entry # 43) is **GRANTED** and that portion of the Final Judgment (Entry # 41) providing that each party bear its respective costs is stayed and as to the remainder of the Final Judgment (Entry # 41) it remains final until consideration of Jensen's Request for Attorneys' Fees and Costs. Jensen is directed to on or before August 15, 2003, file her Request for Attorneys' Fees and Costs, in conformance with the standards set forth in *Johnson v. Georgia Hwy. Express, id.*, together with the sworn *indicia* supporting her request for those reasonable and necessary attorneys' fees and costs incurred in the prosecution of her "maximum cure" claim. On or before September 11, 2003, Defendants shall file their objections, if any, to Jensen's Request for Attorneys' Fees and Costs. Finally, it is

**ORDERED** that Jensen's Request for Status Conference (Entry # 47) is **DENIED**.

The Clerk of Court shall file this Memorandum and Order and provide the parties with a true copy.