United States Court of Appeals,

Fifth Circuit.

No. 95-30818.

Timothy Scott SILMON, Plaintiff-Appellant,

v.

CAN DO II, INC., Defendant-Appellee.

July 25, 1996.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, DAVIS and EMILIO M. GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellant, a member of the crew of the M/V CAN DO II, appeals the dismissal of his maintenance and cure claim which the district court rejected because his illness was due solely to his own willful misconduct. We affirm.

I.

On October 15, 1990, Timothy Scott Silmon began employment as a crew member aboard the M/V CAN DO II, a vessel owned by defendant, Can Do II, Inc. For the first ten days, Silmon performed his work without incident. On the evening of October 24, 1990, Silmon was transferring supplies, including leftover food and a five gallon jug of water, from an offshore platform's boat deck to another crewman standing on the vessel's stern. The food was transferred without incident. When Silmon tried to hand the bottle of water to his fellow crew member, the vessel fell in the swells. When this occurred, Silmon testified that he lost his balance, dropped the bottle of water to the vessel deck and felt pain in his

1

back. According to Silmon, he promptly reported his discomfort to the captain and mate of the vessel and left his watch to lie down. The captain and mate testified that Silmon did not report any pain until the next morning and that he finished his watch. The next morning, when he complained of excruciating pain in his back and legs, he was evacuated by helicopter to an onshore clinic for treatment. The doctor at the clinic in Cut Off, Louisiana, told him to spend three to four days in bed.

When the pain did not subside with bed rest, Silmon went to the West Jefferson Hospital Emergency room in Marrero, Louisiana. Initially he was treated by Dr. Carl Culicchia, a neurosurgeon, who made a preliminary diagnosis after initial tests that Silmon had suffered a ruptured disc. Dr. Culicchia recommended surgery to repair the ruptured disk which was performed on November 8, 1990. During surgery, Dr. Culicchia discovered no disc defect but rather an epidural abscess in Mr. Silmon's spine caused by a bacterial infection. Dr. Culicchia consulted with Dr. Mark Workman, a specialist in infectious diseases, who confirmed that plaintiff's abscess was caused by a bacterial infection. Dr. Workman could not culture the bacteria to identify the strain, probably due to the antibiotics given Silmon prior to surgery. The abscess was removed and Silmon was treated further with antibiotics. Even though his condition improved, he continued to feel pain. Silmon consulted Dr. David Jarrott at the recommendation of his attorneys. After examining Silmon and his past records, Dr. Jarrott concluded that his abscess was not due to a bacterial infection, but rather to a

2

ruptured intervertebral disc.

In February 1991 Silmon sued Can Do II, Inc., for damages under the Jones Act and general maritime law and for maintenance and cure. The Jones Act/general maritime law claims were tried to a jury; the maintenance and cure claim was reserved for the court.

Can Do II, Inc., presented evidence demonstrating Silmon's history of illegal drug use. Specifically, the defendant produced hospital records showing intravenous drug use on two occasions: May 1982 and January 1990. Silmon, however, was tested for drugs at the commencement of his employment and on admission to the West Jefferson Hospital and both those tests were negative. Although the bacterial strain could not be identified to determine the source of the infection, both Drs. Culicchia and Workman concluded that Silmon's abscess from the bacterial infection was most likely caused by his IV drug use. A third doctor, Dr. Conway, who was originally hired by Silmon but testified for Can Do II, agreed with Drs. Culicchia and Workman on the cause of Silmon's injury. The doctors also testified that only in an unusual case would an epidural abscess such as Silmon's be the result of a twisting back injury. Dr. Jarrott testified for Silmon that the abscess was from a ruptured disc caused by a twisting back injury.

The jury found that Silmon had no accident and exonerated the employer in the Jones Act/general maritime law claims. The court then dismissed all claims with prejudice and Silmon appealed to this court. A panel of this court affirmed the judgment as to the Jones Act/general maritime claims, but remanded the maintenance and

3

cure claim for findings of fact and conclusions of law. *Silmon v. Can Do II, Inc.,* No. 93-3416, 30 F.3d 1494 (5th Cir. filed July 22, 1994).

On remand, the district court made findings of fact and conclusions of law and entered a judgment for Can Do II, Inc. on Silmon's maintenance and cure claim. The court found that Silmon's back injury was the result of a bacterial infection caused by illegal IV drug use and that such drug use was willful misconduct which forfeited his right to maintenance and cure. Silmon filed a timely notice of appeal.

## II.

We review the district court's findings of fact under a clearly erroneous standard and its conclusions of law *de novo.* *Prudhomme v. Tenneco Oil Co.,* 955 F.2d 390, 392 (5th Cir.), *cert. denied,* 506 U.S. 826, 113 S.Ct. 84, 121 L.Ed.2d 48 (1992).

Maintenance and cure is an ancient duty[1] imposed upon a shipowner to provide for a seamen who becomes ill or injured during his service to the ship. This duty is implied in maritime employment contracts between the seaman and his employer and is not premised on the fault or negligence of the shipowner. *Aguilar v. Standard Oil Co. of New Jersey,* 318 U.S. 724, 730, 63 S.Ct. 930, 933-34, 87 L.Ed. 1107 (1943); *see also, Bertram v. Freeport McMoran, Inc.,* 35 F.3d 1008, 1013 (5th Cir.1995).

The Supreme Court in *Aguilar* made it clear that the

---

[1]*See, Aguilar v. Standard Oil Co.,* 318 U.S. 724, 730 n. 6, 63 S.Ct. 930, 933-34 n. 6, 87 L.Ed. 1107 (1943).

shipowner's defenses to a seaman's maintenance and cure claim are few and narrowly applied. The precise question presented in that case was whether a seaman could recover for maintenance and cure for injuries he received while on shore leave for his own relaxation. In defining the breadth of the remedy the court states:

> So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility. *Peterson v. The Chandos,* 6 Sawy. 544, 4 F. 645 (D.C.[1880] ); see also *The J.F. Card,* 43 F. 92 (D.C.[1890] ); *The Ben Flint,* 1 Abb. (U.S.) 126, 1 Biss 562, Fed.Cas. No. 1,299 (D.C.[1867] ). Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it. Only some willful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. *The Ben Flint,* 1 Abb (U.S. 126), 1 Biss 562, Fed.Cas. No. 1,299 (D.C.[1867] ) supra. The traditional instances are venereal disease and injuries received as a result of intoxication, ...

*Aguilar,* 318 U.S. at 730-31, 63 S.Ct. at 934.

In *Warren v. United States,* 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951), the Supreme Court was presented with the question of whether a seaman could recover maintenance and cure when he injured himself from a fall after he had been drinking at a dance hall and grabbed a defective handrail on a balcony. The Supreme Court concluded that this was not such gross misconduct as would bar his recovery. The Court, however, reaffirmed its earlier statement in *Aguilar:*

> The question is whether the injury was due to the wilful act, default or misbehavior of petitioner.... The standard prescribed is not negligence but wilful misbehavior.

*Id.* at 528, 71 S.Ct. at 435 (Internal quotations and citations omitted).

5

Appellant argues that because his alleged wilful misconduct occurred before he began his employment with the defendant, he should still recover for his illness which became symptomatic while he was in the service of the ship. This argument ignores the substantial body of law to the contrary relating to illness caused by venereal diseases.

As early as 1853, in *Chandler v. The ANNIE BUCKMAN,* 5 F.Cas. 449 (S.D.N.Y.1853) (No. 2591A), the court stated: "A sailor is not entitled to be treated on shipboard at the expense of the ship, not to wages, whilst disabled by disease brought on by his own vices, nor when he, being in diseased state, ships as an able man, the master and owners being ignorant of his condition." *Id.* The Supreme Court in *Aguilar* cited *Chandler* as an example of the wilful misconduct exception applicable to illness caused by venereal diseases. *Aguilar,* 318 U.S. at 731 n. 10, 63 S.Ct. at 934 n. 10.

We have found no reported decision reaching a contrary conclusion. In *Trimm v. United Fruit Co.,* 41 F.Supp. 395 (S.D.N.Y.1941), the court denied maintenance and cure to a seaman whose illness was caused by venereal disease contracted more than thirty years before. The court expressed its sympathy for the seaman but stated: "Nevertheless, upon the facts as here shown, the illness of the plaintiff is definitely attributable to a voluntary vice of his own, and for which defendant, under existing law, is in no way responsible. It follows that plaintiff cannot recover."

More recently, in *Bynum v. Premier Cruise Lines, Ltd., Inc.,*

6

1994 A.M.C. 2185, 1994 WL 617067 (M.D.Fla.), the court denied maintenance and cure to a seaman diagnosed with the HIV virus after the plaintiff admitted to contracting the virus through sexual activity with several partners, both male and female, prior to signing on the ship.

Other district courts have reached a similar conclusion in cases where the illness was caused solely by chronic alcoholism. *See Des Jardins v. Foss Maritime Co.,* 1993 A.M.C. 2233, 1993 WL 521785 (W.D.Wash.); *Blouin v. American Export Isbrandtsen Lines, Inc.,* 319 F.Supp. 1150 (S.D.N.Y.1970); *Smith v. Isthmian Lines, Inc.,* 205 F.Supp. 954 (N.D.Ca.1962).

Thus, the cases consistently support the district court's legal conclusion that when the illness is caused solely by the wilful misconduct of the seaman, regardless of when the wilful misconduct occurred, the shipowner will escape liability for maintenance and cure.

In this case, the medical testimony of defendant's experts fully support the district court's finding that Silmon's back injury was due solely to an epidural abscess caused by a bacterial infection contracted from Silmon's illegal IV drug use. This finding is therefore not clearly erroneous. The district court also correctly concluded that illegal IV drug use constitutes wilful misconduct. Thus, the district court committed no error in rejecting Silmon's maintenance and cure claim.

### III.

For the reasons stated above, we affirm the district court's

7

judgment.

AFFIRMED.