**Raymond McNEIL Plaintiff**

v.

**JANTRAN, INC., Burlington Northern Railroad Co. and/or Arkansas–Missouri Railroad and/or J & O Railroad Defendants**

No. 02–2045.

United States District Court,
W.D. Arkansas,
Ft. Smith Division.

March 13, 2003.

Dennis Michael O'Bryan, Christopher D. Kuebler, O'Bryan, Baun, Cohen, Kuebler, Birmingham, MI, for Plaintiff.

James E. Crouch, Cypert, Crouch, Clark & Harwell, Springdale, AR, Thomas b. Janoush, Westerfield & Janoush, Cleveland, MS, for Defendant.

## *OPINION & ORDER*

DAWSON, District Judge.

On this 13th day of March 2003, there comes on for consideration the Plaintiff's motion for retroactive and future increase of maintenance rate. (Doc. # 52.) Defendant Jantran filed a response in opposition, (doc. # 56), and Plaintiff filed a reply. (Doc. # 60.) An evidentiary hearing on the motion was held on March 6, 2003 in Fort Smith. Plaintiff appeared with his attorney, Christopher Kuebler, and defendant Jantran was represented by its counsel, Tom Janoush.

Plaintiff brought this suit for damages under the Jones Act, 46 App. U.S.C.A.

§ 688, and general maritime law alleging negligence in the operation of a railroad bridge and breach of the shipowner's obligation to provide maintenance, cure, and wages. For the reasons set forth within this opinion and order, the motion for maintenance and cure will be granted for the interim period pending trial on the merits. This order notwithstanding, Jantran's right to assert and present evidence of its defenses to Plaintiff's claims will be preserved for trial.

## BACKGROUND

Plaintiff was hired by defendant Jantran on November 11, 1997. Plaintiff was given a pre-employment application and physical that included a personal medical history. On the personal medical history portion of the application, Plaintiff noted that he had no previous or prior back problems and stated that he had never been injured on or off the job. (Def's.Resp.Mot., Ex. D.) The physical examination went well, and x-rays of Plaintiff's back were taken. Although the doctor noted some scoliosis of the spine, Plaintiff was deemed fit for unrestricted employment. (Pl's.Reply, Ex. T.)

On July 11, 2001, Plaintiff was serving as first mate aboard the M/V Mr. Tom, a vessel owned by defendant Jantran. The vessel struck a bridge spanning the Arkansas River near mile mark 300.8, in the vicinity of Van Buren, Arkansas. At or near the time of the allision, Plaintiff fell approximately six feet from the deck on which he was working. After picking himself up, Plaintiff went to the aid of another crew member who had been knocked overboard and helped the man climb back onto the boat.

The Mr. Tom continued its way up the river. After a while, Plaintiff sat down and felt pain in his back and shoulder. He reported to the captain that he may have been injured in the allision. He was asked to fill out some paperwork concerning the accident, and he did so. Entries in the vessel log book do not indicate that Plaintiff was suspected of drug or alcohol use before or after the allision. (Pl's.Reply, Ex. G.) The vessel's captain, Roger Williams, testified in deposition that he never suspected Plaintiff of drug or alcohol use prior to the allision, nor did he receive any reports of such suspicions from other crew members. (Pl's. Reply, Ex. B at 4.) Finally, according to the Coast Guard Incident Report completed by the vessel's pilot, Robert Molidor, there was no belief among the crew that drug or alcohol use contributed to Plaintiff's injury. Instead, the injury was attributed to the allision with the bridge. (Pl's.Reply, Exs.H, I.)

Plaintiff was later seen in the emergency room of Sparks Regional Hospital. The examining physician diagnosed Plaintiff with acute myofascial strain in the lumbar area and a right shoulder contusion. The physician's notes do not suggest that Plaintiff appeared to be intoxicated or under the influence of drugs. He was given pain medication and told not to return to work. Although Jantran made a timely request of the hospital, no drug test was administered to the Plaintiff while he was at Sparks. Plaintiff was released from the hospital that same day. Plaintiff re-boarded the Mr. Tom at the lock at mile mark 319, but was restricted to bed rest. As soon as logistically possible, Plaintiff was evacuated from the boat and transported by company van to Mississippi.

On July 13, 2001, Jantran referred Plaintiff to Dr. Don Blackwood at the Family Medical Clinic in Cleveland, Mississippi, for follow-up treatment and a drug test. According to Plaintiff's testimony and the doctor's notes, the office manager or nurse interviewed Plaintiff, noted his vital signs, and ordered x-rays of Plaintiff's back and shoulder area. When the nurse requested that Plaintiff submit

to a drug test, Plaintiff refused, became loud and uncooperative, and demanded that he be permitted to call his attorney. After spending some 15 minutes on the phone with his lawyer, Plaintiff left the office without being questioned or examined by Dr. Blackwood. Plaintiff testified at the hearing that he didn't understand why the office manager was so insistent upon the drug test when Plaintiff was there to have something done for his back and shoulder pain. Plaintiff claims he left because he was being treated "like a dog." Dr. Blackwood reviewed the X-rays of Plaintiff's back and shoulder and did not see any fractures or abnormalities. (Def's.Resp.Mot., Ex. A.)

Plaintiff has now obtained medical treatment from doctors of his own choosing. Dr. Omara diagnosed Plaintiff with a torn rotator cuff in his shoulder, and Dr. Spurrier has recommended surgery for a lumbar disc herniation. Plaintiff has not been able to have the surgery due to financial constraints. Plaintiff remains off work at this time, and Jantran has refused to pay and continues to withhold maintenance and cure following the accident.

### STANDARD OF REVIEW

■ We find scant authority to guide this Court in ruling on Plaintiff's motion for retroactive and future increase of maintenance rate. Plaintiff's complaint includes a claim for payment of maintenance and cure, and he has requested a jury trial in this case. Other than a motion for summary judgment, we are aware of no procedure for obtaining pre-trial judgment on the merits of a claim. Accordingly, we conclude that the motion for retroactive and future maintenance and cure should be treated as something similar to a motion for summary judgment. *See Britton v. U.S.S. Great Lakes Fleet, Inc.*, 302 F.3d 812, 815 (8th Cir.2002); *Freeman v. Thunder Bay Transportation Co., Inc.*, 735 F.Supp. 680 (M.D.La.1990). However, the

Court's findings will be preliminary in nature, and any relief granted will be temporary pending trial and final judgment on the merits.

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2512. The court views the evidence in favor of the nonmoving party, giving that party the benefit of all justifiable inferences that can be drawn in its favor. If reasonable minds could differ as to the import of the evidence, judgment should not be granted. *Id.* at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

### DISCUSSION

■ The duty to provide maintenance and cure is derived from medieval maritime codes. Maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness. *See Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S.Ct. 997, 1000, 8 L.Ed.2d 88 (1962). Cure is payment of medical expenses incurred in treating the seaman's injury or illness. *See Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938). The shipowner is obliged to pay

maintenance and cure until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable. *See Vella v. Ford Motor Co.,* 421 U.S. 1, 5, 95 S.Ct. 1381, 1384, 43 L.Ed.2d 682 (1975); *Vaughan,* 369 U.S. at 531, 82 S.Ct. at 1000; *Neville v. American Barge Line Co.,* 276 F.2d 117, 118–19 (3d Cir.1960).

▆▆ Viewing seamen as wards of the admiralty, the Supreme Court has emphasized that the right to maintenance and cure must be construed liberally and has consistently expanded the scope of the right. *See Vaughan,* 369 U.S. at 531–34, 82 S.Ct. at 1000–01; *Warren v. United States,* 340 U.S. 523, 529–30, 71 S.Ct. 432, 436, 95 L.Ed. 503 (1951); *Aguilar,* 318 U.S. at 729, 735–36, 63 S.Ct. at 933, 936; *Calmar,* 303 U.S. at 529–30, 58 S.Ct. at 653–54. A modern shipowner is obliged to pay maintenance and cure regardless of any fault on its part; only wilful misconduct on the part of the seaman will deprive him of its protection. *Aguilar,* 318 U.S. at 730–31, 63 S.Ct. at 933–34. The duty to provide maintenance and cure is independent of any negligence, and causation is not relevant. *Liner v. J.B. Talley & Co., Inc.,* 618 F.2d 327, 1982 A.M.C. 2693 (5th Cir.1980). Comparative fault will not reduce the recovery. *Deisler v. McCormack Aggregates Co.,* 54 F.3d 1074 (3d Cir.1995); *Rodriguez Alvarez v. Bahama Cruise Line, Inc.,* 898 F.2d 312, 1990 A.M.C. 1290 (2d Cir.1990). Assumption of the risk or gross negligence are not good defenses. *Aguilar v. Standard Oil Co. of New Jersey,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943). A recalcitrant shipowner may not unreasonably withhold maintenance and cure. It has been held:

> There is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner lacks not only a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.

*Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987).

▆▆ To recover for maintenance and cure, a plaintiff need show only that (1) he was working as a seaman; (2) he was injured while in service to the vessel; and (3) he lost wages or incurred expenditures relating to the treatment of the illness or injury. *West v. Midland Enterprises, Inc.,* 227 F.3d 613, 616 (6th Cir.2000). Any ambiguities concerning a seaman's entitlement to maintenance and cure must be resolved in favor of the seaman. *Vaughan v. Atkinson,* 369 U.S. 527, 532, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). At the hearing, Plaintiff testified that he hurt his back and shoulder while working as first mate aboard Jantran's vessel, and that he had been unable to return to work since then and has incurred living expenses. We do not gather from Jantran's response to the motion that there is a dispute concerning Plaintiff's basic entitlement to maintenance and cure. In its answer to the complaint, Jantran admits that Plaintiff was in the course and scope of his employment at the time of the accident. (Jantran's Answer at ¶ 2.)

▆▆ To make out a prima facie case on the maintenance rate question, the plaintiff must present evidence of his actual and necessary living expenses during convalescence. Once he has done so, the burden shifts to the defendant shipowner to produce some evidence in rebuttal. *Clifford v. Mt. Vernon Barge Serv., Inc.,* 127 F.Supp.2d 1055, 1057 (S.D.Ind.1999). *See*

*Miller v. Canal Barge Co., Inc.,* 2000 WL 33389203 (E.D.La.2000) (plaintiff's affidavit and receipts of actual living expenses sufficient to establish prima facie showing of appropriate maintenance rate.) Plaintiff has made out a prima facie case as to the rate of maintenance by submitting an affidavit itemizing his monthly expenses which total $745. (Pl's.Mot., Ex. A.)

Responding to the motion, Jantran raises three defenses that excuse the shipowner's duty to pay maintenance: (1) willful misconduct; (2) willful failure to disclose; and (3) refusal of medical treatment. Jantran has the burden of producing evidence to establish the essential elements of these defenses. Plaintiff's motion should be denied if Jantran presents evidence sufficient to create a question of fact for the jury on any one of the asserted defenses. Conversely, if Jantran fails to produce evidence of an element necessary to the defense, the defense will fail.

### WILLFUL MISCONDUCT

Willful misconduct by the seaman in bringing about the injury is a good defense. *Aguilar v. Standard Oil Co. of New Jersey,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); *Warren v. United States,* 340 U.S. 523, 528, 71 S.Ct. 432, 435, 95 L.Ed. 503 (1951) (fault of seaman must be positively vicious conduct, such as gross negligence or willful disobedience of orders). "Aside from gross misconduct or insubordination, what the seaman is doing and why the how he sustains injury does not affect his right to maintenance and cure ..." *Farrell v. United States,* 336 U.S. 511, 516, 69 S.Ct. 707, 709, 93 L.Ed. 850 (1949). Illness or injury caused solely by the willful misconduct of the seaman negates the shipowner's liability for maintenance and cure. *Silmon v. Can Do II, Inc.,* 89 F.3d 240, 243, 1997 A.M.C. 618 (5th Cir.1996) (back injury caused by bacterial infection contracted from illegal drug use). The shipowner must demonstrate a causal link between the seaman's misconduct and his injury or illness. *West v. Midland Enterprises, Inc.,* 227 F.3d 613, 618 (6th Cir.2000).

In this case, there is no direct evidence that Plaintiff was under the influence of drugs or alcohol at the time of his injury. Defendant would like the court to infer drinking or drug use from Plaintiff's failure to submit to a drug test two days after the accident. However, making such an inference does not end the inquiry. Jantran has failed to demonstrate the causal link between Plaintiff's injuries and any alleged drinking or drug use. Accordingly, Plaintiff's claim for maintenance and cure cannot be barred on this basis.

### WILLFUL CONCEALMENT

An employer/vessel owner is not required to pay maintenance and cure when: (1) the seaman is required to provide pre-employment medical information; (2) he intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, (3) the injury incurred on the employer's vessel is causally linked to the concealed medical condition; and (4) the non-disclosed medical information was material to the employer's decision to hire the seaman. *Wactor v. Spartan Trans. Corp.,* 27 F.3d 347, 352 (8th Cir.1994); *Britton v. U.S.S. Great Lakes Fleet, Inc.,* 302 F.3d 812, 816 (8th Cir.2002). With regard to the fourth factor, the employer must show that it would not have hired the seaman had the medical facts been fully disclosed. *Britton, id.*

Defendant has demonstrated that Plaintiff concealed medical facts on his pre-employment application. Plaintiff failed to disclose that he suffered a prior back injury on August 23, 1992 while employed by a hospital orderly. According to the records, the complaint is described as "lower back pain (severe), hurt on the job."

(Def's.Resp.Mot., Ex. E.) Plaintiff also concealed the fact that he suffered an on the job injury involving a pulled hamstring muscle while employed by Layne Central on December 18, 1990. (*Id.*, Ex. F.) While it may be reasonable to infer that the misrepresentations were intentional, it is less reasonable to infer that a five year old back strain and/or a pulled hamstring are causally linked to the present lumbar disc herniation and torn rotator cuff. However, even if we were to make those inferences, Jantran has not come forward with any evidence from which to infer that Plaintiff would not have been hired had all the facts been disclosed. Since Jantran has failed to create a question of fact on the materiality issue, Plaintiff's right to maintenance and cure cannot be denied for willful concealment.

### REFUSAL OF TREATMENT

■ A seaman's right to maintenance and cure may be forfeited by an unreasonable refusal to accept medical care offered by his employer. *Oswalt v. Williamson Towing Co., Inc.*, 488 F.2d 51, 1974 A.M.C. 1311 (5th Cir.1974). The shipowner's obligation to provide maintenance and cure does not include a duty to honor the seaman's preference for private treatment. *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56, *reh'g denied* 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852. However, it has been held that where the employer tenders care from a private physician, the seaman does not breach his obligation to mitigate damages merely by choosing to see a different private doctor. *Caulfield v. AC & D Marine, Inc.*, 633 F.2d 1129, 1134, 1982 A.M.C. 1033 (5th Cir.1981). The rationale behind this rule is that a seaman should receive no more compensation than would have been necessary had he gone to see the doctor recommended by the employer. *Oswalt, id.* at 55. The burden is on the employer to show that the cost of treatment selected by the seaman unnecessarily exceeded that which the seaman would have incurred had the employer's recommendation been taken. *Caulfield,* id. at 1134.

■ Jantran argues that by walking out of Dr. Blackwood's office, Plaintiff unreasonably refused the free care offered to him and he forfeited his right to any future maintenance and cure. We do not agree. Dr. Blackwood is a private physician. Had Plaintiff remained under Dr. Blackwood's care, Jantran would have incurred the cost of Dr. Blackwood's services and any other doctor to whom Plaintiff may have been referred for more specialized treatment. The fact that Plaintiff sought treatment from another physician has not necessarily resulted in expenditures that could have been avoided. Jantran has not submitted any evidence from which to infer that the course of treatment selected by Plaintiff is unnecessary or that the cost exceeds what Jantran would have paid had Plaintiff remained under Dr. Blackwood's care. Accordingly, Plaintiff's motion cannot be denied for reason of refusal of medical care.

### CONCLUSION AND ORDER

Plaintiff's motion for retroactive and future payment of maintenance and cure should be and hereby is GRANTED. Jantran shall pay to Plaintiff within twenty days of the date of this order maintenance at the rate of $26.61 per day retroactive to July 13, 2001 and continuing until such time as Jantran proves that Plaintiff has reached maximum possible recovery or the date of trial, whichever is sooner. Jantran is also ordered to pay Plaintiff's medical bills until Plaintiff has reached maximum possible recovery or until the date of trial, whichever is sooner.

Plaintiff's motion for attorney's fees is DENIED at this time, but the issue is reserved for trial on the merits.

Notwithstanding this order, Jantran may present evidence of the defenses to payment of maintenance and cure during trial on the merits, and, if sufficient evidence is produced, the question(s) will be permitted to go to the jury for final decision.

Jury trial remains set for the week of September 22, 2003.

IT IS SO ORDERED.